E-FILED
Friday, 18 April, 2025  03:19:40 PM
Clerk, U.S. District Court, ILCD

Attorney for Plaintiff:
James B. Conte
Illinois Bar Reg. No. 6226681
Lead Counsel
CR MILES P.C.
405 Mason Ct., Suite 119
Fort Collins, CO 80524
Email: jbconte@CRMILES.com
(970) 480-5496 telephone
(970) 492-0003 facsimile

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | |
|---|---|
| Blue Frog Roofing Limited, a Colorado Limited Liability Company <br><br>            Plaintiff <br><br> v. <br><br> Blue Frog Restorations, Inc., an Illinois Corporation <br><br>            Defendant | Case No_____ <br><br> Judge_____ <br><br> Magistrate _____ |

# Complaint for Damages, Equitable Relief Sought and Demand for Jury Trial

## Parties

1.      Plaintiff Blue Frog Roofing, Limited (hereinafter "Plaintiff") is a Colorado

limited liability company, with a principal place of business at 405 Mountain View Rd.,

Berthoud, Colorado  80513.

2.      Defendant, Blue Frog Restorations, Inc. (hereinafter "Defendant") is a corporation

organized under the laws of Illinois. It has a regular and continuous place of business at 41 East

University Ave., Champaign, Illinois  61820.

1

**Jurisdiction and Venue**

3.     This Court has subject matter jurisdiction over the Latham Act claims pursuant to

*15 U.S.C. § 1121*, and *28 U.S.C. § 1338(a)*, and *28 U.S.C. § 1338(b)*. It has subject matter over

the state unfair competition claims under its pendent jurisdiction and under 28 USCS § 1367.

4.     The Court has personal jurisdiction over the Defendant under 735 ILCS 5/2-

209(b) and the Due Process Clause in that Defendant is a corporation organized under the laws

of Illinois and has a regular and continuous place of business in 41 E University Ave, Champaign

,Illinois.

5.     Venue is proper in the Central District of Illinois, Urbana Division, under 28

U.S.C. § 1391 (b)(1) in that Defendant resides in the Central District of Illinois, Urbana Division

**First Cause of Action**
**Trademark Infringement Under 15 U.S.C. § 1114**

6.     Plaintiff owns all right, title, and interest in and to United States Trademark

Registration 6451224 for the trademark BLUE FROG ROOFING (word mark), registered

August 17, 2021, with a date of First Use in commerce as at least as early July 2, 2018, for use

with roofing services; maintenance of roofs; comprehensive preventative maintenance service for

roofing systems; roofing consultation; roofing contracting; and roofing installation (hereinafter

"BLUE FROG ROOFING SERVICES"). A copy of the registration is attached hereto and

incorporated herein by reference as Exhibit A.

7.     The registration is valid and in force.

8.     The registered BLUE FROG ROOFING trademark, since at least as early as July

2, 2018, has been continuously used in the ordinary course of business in commerce by Plaintiff

and/or by entities under the control of Plaintiff in connection with providing roofing services;

maintenance of roofs; comprehensive preventative maintenance service for roofing systems; roofing consultation; roofing contracting; and roofing installations, hereinafter, BLUE FROG ROOFING SERVICES.

9.      Plaintiff always provides and maintains control (including quality control) of those entities and persons who provide the BLUE FROG ROOFING SERVICES to ensure the BLUE FROG ROOFING SERVICES are provided, in connection with BLUE FROG ROOFING trademark, in a favorable light and with consistent high quality that meets Plaintiff's uniform and exacting quality standards.

10.      Plaintiff's target market, in part, is owners of single-family residences.

11.      Plaintiff's target market, in part, includes entities that are responsible for the acquisition of Plaintiff's BLUE FROG ROOFING SERVICES for commercial property such as commercial property managers, commercial real estate managers, and property managers for REITS.

12.      Plaintiff's target market, in part, includes entities that are responsible for the acquisition of Plaintiff's BLUE FROG ROOFING SERVICES for apartment  multi-family residences such as apartment property managers, REITS external property managers, and REITS internal property managers.

13.      Plaintiff's target market, in part, includes entities that are responsible for the acquisition of Plaintiff's BLUE FROG ROOFING SERVICES for Homeowner Associations, such as HOA property managers and HOA Board members.

14.      Further, Plaintiff's target market includes the Federal Government and more particularly Government Acquisition Personnel. Plaintiff primarily contacts these entities through the United States Core of Army Engineers.

15. The above target markets are hereinafter collectively referred to as "BLUE FROG ROOFING TARGET MARKETS."

16. To reach the BLUE FROG ROOFING TARGET MARKETS, since at least July 2, 2018, Plaintiff has marketed and maintained control (including quality control) over the marketing of the BLUE FROG ROOFING SERVICES in commerce in connection with the BLUE FROG ROOFING trademark so that such marketing always portrays BLUE FROG ROOFING SERVICES and the trademark BLUE FROG ROOFING in a favorable light, and as meeting Plaintiff's uniform high quality and exacting high quality standards, hereinafter the "BLUE FROG MARKETING."

17. The BLUE FROG MARKETING includes the website <https://bluefrogroofing.com/>, optimized for appearing in search results using over 1,000 key words used within the website including, roofing and within commercial the key words include: TPO Roofing, PVC Roofing, EPDM Roofing, shingle roofing, steel roofing, tile roofing, and mod bits.

18. The BLUE FROG MARKETING includes other electronic media promoting BLUE FROG ROOFING SERVICES in connection with the BLUE FROG ROOFING trademark, such as the following third party sites and publications directed to BLUE FROG ROOFING TARGET MARKETS: Colorado Roofing Association; CAI, Community Association Institute; International Facilities Management; IREM, International Institute of Real Estate Management; BBB, the Better Business Bureau; and Owens Corning Platinum National list of contractors certified through Ownes Corning.

19. The BLUE FROG MARKETING includes attending the following trade shows and seminars where the BLUE FROG ROOFING trademark was used: CAI National Tradeshow;

4

Owens Corning Platinum Conference; International Roofing Expo; IIBEC, International Institute of building and Enclosure Contractors.

20.    Notably, the managing member of Plaintiff sits on the Board of Owens Corning Platinum Advisory Board.

21.    The above-described use and marketing of the registered BLUE FROG ROOFING trademark in connection with the BLUE FROG ROOFING SERVICES has inured the BLUE FROG ROOFING trademark with considerable goodwill and a favorable reputation amongst the BLUE FROG ROOFING TARGET MARKETS.

22.    Defendant adopted and started using the trademark BLUE FROG RESTORATIONS and DESIGN trademark, hereinafter the "BLUE FROG RESTORATIONS and DESIGN Infringing Mark" well after the BLUE FROG ROOFING trademark was first used, first used in commerce, and well after Plaintiff obtained the registration for the BLUE FROG ROOFING trademark and well after the BLUE FROG ROOFING trademark became inured with considerable goodwill and a favorable reputation amongst the BLUE FROG ROOFING TARGET MARKETS.

23.    The BLUE FROG RESTORATIONS and DESIGN Infringing Mark, as shown below, is used in commerce in connection with services promoted on Defendant's website



<https://bluefrogrestorations.com/> under the heading "Roofing," and in part reads "With our expertise, attention to detail, and commitment to quality craftsmanship, we can deliver exceptional results for your roofing projects."

24.    Both the BLUE FROG RESTORATIONS and DESIGN Infringing Mark and Plaintiff's BLUE FROG ROOFING trademark are used on the same or highly similar services.

25.    A comparison of the BLUE FROG RESTORATIONS and DESIGN Infringing Mark, shown below, to Plaintiff's BLUE FROG ROOFING (word) trademark is shown below:

| Infringing Mark | Plaintiff's Mark |
|---|---|
|  | BLUE FROG ROOFING (word mark) |

26.    Assessing Plaintiff's mark as a whole shows BLUE FROG in Plaintiff's mark dominates as the term "ROOFING" engenders a descriptor of the nature of services. The term BLUE FROG is arbitrary as applied to BLUE FROG ROOFING SERVICES and thus the mark, as a whole, is strong. Plaintiff's mark, as a whole, is pronounced BLUE FROG ROOFING and has a connation and visual look as BLUE FROG ROOFING. The commercial impression of the mark as a whole when applied to the BLUE FROG ROOFING SERVICES is BLUE FROG.

27.    As to the BLUE FROG RESTORATIONS and DESIGN Infringing Mark, analyzed as a whole, like Plaintiff's mark, it is pronounced BLUE FROG. Like Plaintiff's mark, BLUE FROG dominates. RESTORATIONS connotes a nature of the service. The service as shown by Defendant's own website encompasses Plaintiff's BLUE FROG ROOFING SERVICES. Looking at the mark as a whole, the frog design does not dominate as it simply

depicts what the mark sounds like. The mark, like Plaintiff's mark, has the commercial

impression BLUE FROG. One would only remember the blue frog design without detail.

28.    Both marks, as shown above, analyzed as a whole and compared as a whole, have

the same or highly similar sight, sound, meaning and connote the same overall commercial

impression, which is BLUE FROG.

29.    Even if the BLUE FROG RESTORATIONS and DESIGN Infringing Mark

creates several distinct commercial impressions, each of the distinct impressions, trademarks, are

highly similar in sight, sound, meaning, and overall impression to Plaintiff's BLUE FROG

ROOFING TRADEMARK.

30.    Assumed distinct commercial impressions, trademarks, of Defendant







31.    Defendant adopted and started using the above assumed distinct commercial

Impressions, trademarks, hereinafter collectively Assumed Distinct Commercial Impression

Trademarks, well after the BLUE FROG ROOFING trademark was first used, first used in

commerce, and well after Plaintiff obtained the registration for the BLUE FROG ROOFING

trademark and well after the BLUE FROG ROOFING trademark became inured with

considerable goodwill and a favorable reputation amongst the BLUE FROG ROOFING

TARGET MARKETS.

32.     Each of the Assumed Distinct Commercial Impression Trademarks are highly

similar to Plaintiff's BLUE FROG ROOFING trademark. For instance, the only difference

between Defendants BLUE FROG mark and applicant's BLUE FROG ROOFING trademark is

the inclusion of ROOFING in Plaintiff's mark. The BLUE FROG in Plaintiff's mark dominates

as the term "ROOFING " engenders a descriptor of the nature of services. The marks both

connote an overall impressions of BLUE FROG.

33.     Also, with respect to the assumed distinct commercial impression, trademark,

BLUE FROG RESTORATIONS, the inclusion of RESTORATIONS does not distinguish the

mark from Plaintiff's mark. Like Plaintiff's mark, BLUE FROG dominates in Defendant's mark.

RESTORATIONS connotes a nature of the service. The service, as shown by Defendant's own

website, encompasses Plaintiff's BLUE FROG ROOFING SERVICES.

34.     Finally, with respect to the assumed distinct commercial impression, trademark,

Blue FROG and DESIGN shown above, the inclusion of the design of the frog, house, and car

does not distinguish the mark. The design does not dominate as it simply mostly depicts what the

mark sounds like. The mark like, Plaintiff's mark, has the commercial impression BLUE FROG.

35.     On information and belief, the BLUE FROG ROOFING TARGET MARKETS

exposed to the BLUE FROG ROOFING trademark and Defendant's target markets exposed to

the BLUE FROG RESTORATIONS and DESIGN Infringing Mark and to Defendant's Assumed

Distinct Commercial Impression Trademarks overlap and include a substantial number of the

same entities.

36.     On information and belief, the BLUE FROG MARKETING done in connection with BLUE FROG ROOFING trademark and the Defendant's marketing done in connection with BLUE FROG RESTORATIONS and DESIGN Infringing Mark and Defendant's Assumed Distinct Commercial Impression Trademarks use the same and overlapping channels of trade. As but one such example, both parties use a website optimized for search. When one types into the Google search engine "Blue Frog Restorations review," one gets an AI overview describing services offered by Plaintiff. The user is presented with Defendant's websites. See Exhibit B attached hereto and incorporated herein by reference.

37.     On information and belief, Defendant copied Plaintiff's BLUE FROG ROOFING mark.

38.     Actual confusion has occurred in connection with the use of the BLUE FROG RESTORATIONS and DESIGN Infringing Mark and Defendant's Assumed Distinct Commercial Impression Trademarks. In around 2024, Plaintiff received a call from a recipient of Defendant's shoddy roofing services done in connection with at least one of the BLUE FROG RESTORATIONS and DESIGN Infringing Mark and Defendant's Assumed Distinct Commercial Impression Trademarks. After some discussion, Plaintiff learned that Defendant, not Plaintiff, provided the roofing services.

39.     Additional actual confusion occurred when Plaintiff received calls from people who, on information and belief, received shoddy roofing services from Defendant's but blamed Plaintiff because the provider of the services used at least one of BLUE FROG RESTORATIONS and DESIGN Infringing Mark and Defendant's Assumed Distinct Commercial Impression Trademarks.

40.    Plaintiff asserts that the BLUE FROG ROOFING TARGET MARKET, not being specialized roofers themselves,  would use a modest amount of time and care selecting the service provider.

41.    Based on at least the above-described similarities between Plaintiffs BLUE FROG ROOFING trademark and Defendant's BLUE FROG RESTORATIONS and DESIGN Infringing Mark; the overlapping target markets; the overlapping channels of trade, the actual confusion, and copying, a likelihood of confusion and actual confusion exists amongst the relevant target markets as to whether the source of services offered in connection with Defendant's BLUE FROG RESTORATIONS and DESIGN Infringing Mark emanate from the same source as the services offered in connection with Plaintiffs BLUE FROG ROOFING trademark or are otherwise associated with or sponsored by the source of services offered under the BLUE FROG ROOFING trademark.

42.    Accordingly, Defendant's BLUE FROG RESTORATIONS and DESIGN Infringing Mark infringes upon Plaintiff's BLUE FROG ROOFING trademark.

43.    Upon information and belief, the infringement is willful.

44.    Furthermore, based on at least the above described similarity between Plaintiffs BLUE FROG ROOFING trademark and each of Defendant's Assumed Distinct Commercial Impression Trademarks; the overlapping target markets; the overlapping channels of trade, the actual confusion, and copying, a likelihood of confusion exists and actual confusion exists amongst the relevant target markets as to whether the source of services offered in connection with each of Defendant's Assumed Distinct Commercial Impression Trademarks emanate from the same source as the services offered in connection with Plaintiffs BLUE FROG ROOFING

trademark or are otherwise associated with or sponsored by the source of services offered under the BLUE FROG ROOFING trademark.

45.    Accordingly, Defendant's Assumed Distinct Commercial Impression Trademarks each infringe upon Plaintiff's BLUE FROG ROOFING trademark.

46.    Upon information and belief, the infringement is willful.

47.    As a result of the above-described infringement, Plaintiff has been damaged in that plaintiff has lost out on sales to the BLUE FROG ROOFING TARGET MARKET to Defendant, Plaintiff has suffered irreparable harm in that its goodwill has suffered a diminution in value, and because Defendant has been unjustly enriched trading on the goodwill of Plaintiff. Unless Defendant is preliminarily and permanently enjoined from use of Defendant's BLUE FROG RESTORATIONS and DESIGN Infringing Mark and each of Defendant's Assumed Distinct Commercial Impression Trademarks, Plaintiff will continue to suffer irreparable harm.

## Second Cause of Action
## False Designation of Origin for the BLUE FROG and Design Trademark Under 15 U.S.C. § 1125(a);

48.    Plaintiff's BLUE FROG and DESIGN trademark has been continuously used in the ordinary course of business in commerce by Plaintiff and/or by entities under the control of Plaintiff in connection with providing roofing services; maintenance of roofs; comprehensive preventative maintenance service for roofing systems; roofing consultation; and roofing contracting; and roofing installations (hereinafter, "BLUE FROG ROOFING SERVICES") since at least as early as July 2, 2018. A copy of the BLUE FROG and DESIGN trademark is shown below.



49.    Plaintiff always provides and maintains control (including quality control) of those persons and entities who provide the BLUE FROG ROOFING SERVICES to ensure the BLUE FROG ROOFING SERVICES are provided, in connection with BLUE FROG and DESIGN trademark, in a favorable light and with consistent high quality that meets Plaintiff's uniform and exacting quality standards.

50.    Plaintiff's target market, in part, is owners of single-family residences.

51.    Plaintiff's target market, in part, includes entities that are responsible for the acquisition of Plaintiff's BLUE FROG ROOFING SERVICES for commercial property, such as commercial property managers, commercial real estate managers, and property managers for REITS.

52.    Plaintiff's target market, in part, includes entities that are responsible for the acquisition of Plaintiff's BLUE FROG ROOFING SERVICES for multi-family residences such as apartment property managers, REITS external property managers, and REITS internal property managers.

53.    Plaintiff's target market, in part, includes entities that are responsible for the acquisition of Plaintiff's BLUE FROG ROOFING SERVICES for Homeowner Associations such as HOA property managers and HOA Board members.

54.    Further, Plaintiff's target market includes the Federal Government and more particularly the Government Acquisition Personnel. Plaintiff primarily contacts these entities through the United States Core of Army Engineers.

55.    The above target markets are hereinafter collectively referred to as "BLUE FROG ROOFING TARGET MARKETS."

56.    To reach the BLUE FROG ROOFING TARGET MARKETS, since at least July 2, 2018, Plaintiff has marketed and maintained control, including quality control, over the marketing of the BLUE FROG ROOFING SERVICES in commerce in connection with the BLUE FROG and DESIGN trademark so that such marketing always portrays BLUE FROG ROOFING SERVICES and the BLUE FROG and DESIGN trademark in a favorable light, and as meeting Plaintiff's uniform and exacting high quality standards, hereinafter the "BLUE FROG MARKETING."

57.    The BLUE FROG MARKETING includes the website <https://bluefrogroofing.com/> optimized for appearing in search results using over 1,000 key words within the website including, roofing and the key words also include: TPO Roofing, PVC Roofing, EPDM Roofing, shingle roofing, steel roofing, tile roofing, and mod bits.

58.    The BLUE FROG MARKETING includes other electronic media promoting BLUE FROG ROOFING SERVICES in connection with the BLUE FROG and DESIGN trademark such as the following third party sites and publications directed to BLUE FROG ROOFING TARGET MARKETS: Colorado Roofing Association; CAI (Community Association Institute); International Facilities Management; IREM (International Institute of Real Estate Management); BBB (the Better Business Bureau); and Owens Corning Platinum National list of contractors certified through Ownes Corning.

59.    The BLUE FROG MARKETING includes attending the following trade shows and seminars at which the BLUE FROG and DESIGN trademark was used: CAI National

Tradeshow; Owens Corning Platinum Conference; International Roofing Expo; IIBEC (International Institute of Building and Enclosure Contractors).

60.   Notably, the managing member of Plaintiff sits on the Board of IIBEC.

61.   The above-described use and marketing of the BLUE FROG and DESIGN trademark in connection with the BLUE FROG ROOFING SERVICES has inured the BLUE FROG and DESIGN trademark with considerable goodwill and a favorable reputation amongst the BLUE FROG ROOFING TARGET MARKETS.

62.   Defendant adopted and started using the trademark BLUE FROG RESTORATIONS and DESIGN trademark (hereinafter the "BLUE FROG RESTORATIONS and DESIGN Infringing Mark") well after the BLUE FROG and DESIGN trademark was first used, first used in commerce, and well after the BLUE FROG and DESIGN trademark became inured with considerable goodwill and a favorable reputation amongst the BLUE FROG ROOFING TARGET MARKETS.

63.   The BLUE FROG RESTORATIONS and DESIGN Infringing Mark as shown below is used in commerce in connection with services promoted on Defendant's website <https://bluefrogrestorations.com/> under the heading "Roofing", and in part reads, "With our expertise, attention to detail, and commitment to quality craftsmanship, we can deliver exceptional results for your roofing projects."



64.   Both the BLUE FROG RESTORATIONS and DESIGN Infringing Mark and Plaintiff's BLUE FROG and DESIGN trademark are used on the same or highly similar services.

65.    A comparison of the BLUE FROG RESTORATIONS and DESIGN Infringing

Mark, shown below to Plaintiff's BLUE FROG and DESIGN trademark is shown below:

| Infringing Mark | Plaintiff's Mark |
|---|---|
|  |  |

66.    Assessing Plaintiff's mark as a whole shows the phrase BLUE FROG in

Plaintiff's mark dominates. The frog design does not dominate as it simply depicts what the mark

sounds like and how the mark is pronounced. The term BLUE FROG and the frog design is

arbitrary as applied to BLUE FROG ROOFING SERVICES and thus the mark, as a whole, is

strong. Plaintiff's mark, as a whole, is pronounced BLUE FROG and has a connation and visual

look as BLUE FROG.  The commercial impression of the mark as a whole when applied to the

BLUE FROG ROOFING SERVICES is BLUE FROG. One also remembers the mark includes a

picture of a blue frog without specific details.

67.    As to the Infringing Mark, analyzed as a whole, like Plaintiff's mark, it is

pronounced BLUE FROG. Like Plaintiff's mark, BLUE FROG dominates Defendant's mark.

RESTORATIONS connotes a nature of the service. The service as shown by Defendant's own website encompasses Plaintiff's BLUE FROG ROOFING SERVICES. Looking at the mark as a whole, the frog design does not dominate as it simply mostly depicts what the mark sounds like. The mark, like Plaintiff's mark, has the commercial impression BLUE FROG. One also remembers a picture of a blue frog without detail.

68.    Both marks, as shown above, analyzed as a whole and compared as a whole, have the same or highly similar sight, sound, meaning and connote the same overall commercial impression which is BLUE FROG.

69.    Even if the BLUE FROG RESTORATIONS and DESIGN Infringing Mark creates several distinct commercial impressions, each of which are highly similar in sight, sound, meaning, and overall impression to Plaintiff's BLUE FROG and DESIGN trademark.

70.    Assumed distinct commercial impressions (trademarks) of Defendant:







71.    Defendant adopted and started using the above distinct commercial impression trademarks (hereinafter collectively "Assumed Distinct Commercial Impression Trademarks") well after the BLUE FROG and DESIGN trademark was first used and first used in commerce, and well after the BLUE FROG and DESIGN trademark became inured with considerable

goodwill and a favorable reputation amongst the BLUE FROG ROOFING TARGET MARKETS.

72.    Each of the Assumed Distinct Commercial Impression Trademarks are highly similar to Plaintiff's BLUE FROG and DESIGN trademark. For instance, the only difference between Defendants BLUE FROG mark and applicant's BLUE FROG and DESIGN mark is the inclusion of the frog in Plaintiff's mark. The frog design in Plaintiff's mark does not dominate as it simply depicts what the mark sounds like and how the mark is pronounced. The marks both connote an overall impression of BLUE FROG.

73.    Also, with respect to the Assumed Distinct Commercial Impression Trademark BLUE FROG RESTORATIONS, the inclusion of RESTORATIONS does not distinguish the mark from Plaintiff's mark. Like Plaintiff's mark, BLUE FROG dominates Defendant's mark. RESTORATIONS connotes a nature of the service. The services as shown by Defendant's own website encompass Plaintiff's BLUE FROG ROOFING SERVICES.

74.    Finally, with respect to the Assumed Distinct Commercial Impression Trademark of Defendant's BLUE FROG and DESIGN shown above, the inclusion of the picture of the frog, house, and car does not distinguish the mark. The picture does not dominate as it simply mostly depicts what the mark sounds like. The mark, like Plaintiff's mark, has the commercial impression BLUE FROG. Both marks' frog designs are remembered simply as blue frogs without detail.

75.    On information and belief, the BLUE FROG ROOFING TARGET MARKETS exposed to the Plaintiff's BLUE FROG and DESIGN mark, and Defendant's target markets exposed to the BLUE FROG RESTORATIONS and DESIGN Infringing Mark and to

Defendant's Assumed Distinct Commercial Impression Trademarks overlap and include a substantial number of the same entities.

76.     On information and belief, the BLUE FROG MARKETING done in connection with BLUE FROG and DESIGN trademark and the Defendant's marketing done in connection with BLUE FROG RESTORATIONS and DESIGN Infringing Mark and Defendant's Assumed Distinct Commercial Impression Trademarks use the same and overlapping channels of trade. As for one such example, both parties use a website optimized for search. When one types into the Google search engine "Blue Frog Restorations review," one gets an AI overview describing services offered by Plaintiff. The user is presented with Defendant's websites. See Exhibit B attached hereto and incorporated herein by reference.

77.     On information and belief, Defendant copied Plaintiff's BLUE FROG and DESIGN mark.

78.     Actual confusion has occurred in connection with the use of the BLUE FROG RESTORATIONS and DESIGN Infringing Mark and Defendant's Assumed Distinct Commercial Impression Trademarks. In around 2024, Plaintiff received a call from a recipient of Defendant's shoddy roofing services done in connection with at least one of the BLUE FROG RESTORATIONS and DESIGN Infringing Mark and Defendant's Assumed Distinct Commercial Impression Trademarks. After some discussion, Plaintiff learned that Defendant, not Plaintiff, provided the roofing services.

79.     Additional actual confusion occurred when Plaintiff received calls from people who, on information and belief, received shoddy roofing services from Defendant's but blamed Plaintiff because the provider of the services used at least one of BLUE FROG

RESTORATIONS and DESIGN Infringing Mark and Defendant's Assumed Distinct Commercial Impression Trademarks.

80.     Plaintiff asserts that the BLUE FROG ROOFING TARGET MARKET, not being specialized roofers themselves, and the project costing a bit of money, would use a modest amount of time and care selecting the service provider.

81.     Based on at least the above described similarity between Plaintiffs BLUE FROG and DESIGN trademark and Defendant's BLUE FROG RESTORATIONS and DESIGN Infringing Mark; the overlapping target markets; the overlapping channels of trade, the actual confusion; and copying, a likelihood of confusion and actual confusion exists amongst the relevant target markets as to whether the source of services offered in connection with Defendant's BLUE FROG RESTORATIONS and DESIGN Infringing Mark emanate from the same source as the services offered in connection with Plaintiffs BLUE FROG and DESIGN trademark or are otherwise associated with or sponsored by the source of services offered under the BLUE FROG and DESIGN trademark.

82.     Accordingly, Defendant's BLUE FROG RESTORATIONS and DESIGN Infringing Mark infringes Plaintiff's BLUE FROG and DESIGN trademark.

83.     Upon information and belief, the infringement is willful.

84.     Furthermore, based on at least the above-described similarity between Plaintiffs BLUE FROG and DESIGN trademark and each of Defendant's Assumed Distinct Commercial Impression Trademarks; the overlapping target markets; the overlapping channels of trade, the actual confusion, and copying, a likelihood of confusion exists and actual confusion exists amongst the relevant target markets as to whether the source of services offered in connection with each of Defendant's Assumed Distinct Commercial Impression Trademarks emanate from

the same source as the services offered in connection with Plaintiffs BLUE FROG and DESIGN trademark or are otherwise associated with or sponsored by the source of services offered under the Plaintiff's BLUE FROG and DESIGN trademark.

85.    Accordingly, Defendant's Assumed Distinct Commercial Impression Trademarks each infringe upon Plaintiff's BLUE FROG and DESIGN trademark.

86.    Upon information and belief, the infringement is willful.

87.    As a result of the above-described infringement Plaintiff has been damaged in that it has lost sales of services the BLUE FROG ROOFING TARGET MARKET to Defendant. Plaintiff has suffered irreparable harm in that its goodwill has suffered a diminution in value, and because Defendant has been unjustly enriched trading on the goodwill of Plaintiff. Unless Defendant is preliminarily and permanently enjoined from use of Defendant's BLUE FROG RESTORATIONS and DESIGN Infringing Mark and each of Defendant's Assumed Distinct Commercial Impression Trademarks, Plaintiff will continue to suffer irreparable harm.

## Third Cause of Action

## False designation of Origin, BLUE FROG (word) Trademark Under 15 U.S.C. § 1125(a)

88.    Plaintiff's BLUE FROG (word) trademark  has been continuously used in the ordinary course of business in commerce by Plaintiff and/or by entities under the control of Plaintiff in connection with providing roofing services; maintenance of roofs; comprehensive preventative maintenance service for roofing systems; roofing consultation; and roofing contracting; and roofing installations ("hereinafter, BLUE FROG ROOFING SERVICES") since at least as early as July 2, 2018.

89.     Plaintiff always provides and maintains control (including quality control) of those entities and persons who provide the BLUE FROG ROOFING SERVICES to ensure the BLUE FROG ROOFING SERVICES are provided, in connection with BLUE FROG (word) trademark, in a favorable light and with consistent high quality that meets Plaintiff's uniform and exacting quality standards.

90.     Plaintiff's target market, in part, is owners of single-family residences

91.     Plaintiff's target market, in part, includes entities that are responsible for the acquisition of Plaintiff's BLUE FROG ROOFING SERVICES for commercial property such as commercial property managers, commercial real estate managers, and property managers for REITS.

92.     Plaintiff's target market, in part, includes entities that are responsible for the acquisition of Plaintiff's BLUE FROG ROOFING SERVICES for multi-family residences such as apartment property managers, REITS external property managers, and REITS internal property managers.

93.     Plaintiff's target market, in part, includes entities that are responsible for the acquisition of Plaintiff's BLUE FROG ROOFING SERVICES for Homeowner Associations such as HOA property managers, and HOA Board members.

94.     Further, Plaintiff's target market includes the Federal Government and more particularly Government Acquisition Personnel. Plaintiff primarily contacts these entities through the United States Core of Army Engineers.

95.     The above target markets are hereinafter collectively referred to as "BLUE FROG ROOFING TARGET MARKETS."

96.     To reach the BLUE FROG ROOFING TARGET MARKETS, since at least July 2, 2018, Plaintiff has marketed and maintained control (including quality control) over the marketing of the BLUE FROG ROOFING SERVICES in commerce in connection with the BLUE FROG (word) trademark so that such marketing always portrays BLUE FROG ROOFING SERVICES and the BLUE FROG (word) trademark, in a favorable light, and as meeting Plaintiff's uniform and exacting high quality standards (hereinafter the "BLUE FROG MARKETING").

97.     The BLUE FROG MARKETING includes the website <https://bluefrogroofing.com/> optimized for appearing in search results using over 1,000 key words within the website including, roofing and the key words TPO Roofing, PVC Roofing, EPDM Roofing, shingle roofing, steel roofing, tile roofing, and mod bits.

98.     The BLUE FROG MARKETING includes other electronic media promoting BLUE FROG ROOFING SERVICES in connection with the BLUE FROG (word) trademark, such as the following third party sites and publications directed to the BLUE FROG ROOFING TARGET MARKETS; the sites and publications including, Colorado Roofing Association; CAI (Community Association Institute); International Facilities Management; IREM (International Institute of Real Estate Management); BBB (the Better Business Bureau); and Owens Corning Platinum National list of contractors certified through Ownes Corning.

99.     The BLUE FROG MARKETING includes attending the following trade shows and seminars where the BLUE FROG (word) trademark was used; CAI National Tradeshow; Owens Corning Platinum Conference; International Roofing Expo; IIBEC (International Institute of Building and Enclosure Contractors).

100.    Notably, the managing member of Plaintiff sits on the Board of IIBEC.

101.    The above-described use and marketing of the BLUE FROG (word) trademark in connection with the BLUE FROG ROOFING SERVICES has inured the BLUE FROG (word) trademark with considerable goodwill and a favorable reputation amongst the BLUE FROG ROOFING TARGET MARKETS.

102.    Defendant adopted and started using the trademark BLUE FROG RESTORATIONS and DESIGN trademark, hereinafter the "BLUE FROG RESTORATIONS and DESIGN Infringing Mark" well after the BLUE FROG (word) trademark was first used, first used in commerce, and well after the BLUE FROG (word) trademark became inured with considerable goodwill and a favorable reputation amongst the BLUE FROG ROOFING TARGET MARKETS.

103.    The BLUE FROG RESTORATIONS and DESIGN Infringing Mark as shown below, is used in commerce in connection with services promoted on Defendant's website <https://bluefrogrestorations.com/> under the heading "Roofing", and in part reads, "With our expertise, attention to detail, and commitment to quality craftsmanship, we can deliver exceptional results for your roofing projects."



104.    Both the BLUE FROG RESTORATIONS and DESIGN Infringing Mark and Plaintiff's BLUE FROG (word) trademark are used on the same or highly similar services.

105.    A comparison of the Infringing Markto Plaintiff's BLUE FROG (word) trademark is shown below:

| Infringing Mark | Plaintiff's Mark |
|---|---|
|  | BLUE FROG (word) Trademark |

106.     Assessing Plaintiff's mark as a whole shows BLUE FROG in Plaintiff's mark dominates as it is the only feature of the mark. The term BLUE FROG is arbitrary as applied to BLUE FROG ROOFING SERVICES and thus the mark as a whole is strong. Plaintiff's mark is pronounced BLUE FROG and has a connation and visual look as BLUE FROG.  The commercial impression of the mark as a whole when applied to the BLUE FROG ROOFING SERVICES is BLUE FROG.

107.     As to the Infringing Mark, analyzed as a whole, like Plaintiff's mark, it is pronounced BLUE FROG. Like Plaintiff's mark, BLUE FROG dominates in Defendant's mark. RESTORATIONS connotes a nature of the service. The service as shown by Defendant's own website encompasses Plaintiff's BLUE FROG ROOFING SERVICES. Looking at the mark as a whole, the frog design does not dominate as it simply depicts mostly what the mark sounds like. The mark like Plaintiff's mark has the commercial impression BLUE FROG. One also remembers a design of a blue frog without detail.

108.     Both marks, as shown above, analyzed as a whole and compared as a whole, have the same or highly similar sight, sound, and meaning which connote the same overall commercial impression which is BLUE FROG.

24

109.    Even if the BLUE FROG RESTORATIONS and DESIGN Infringing Mark creates several distinct commercial impressions, each of the distinct impressions, are highly similar in sight, sound, meaning and overall impression to Plaintiff's BLUE FROG (word) trademark.

110.    Assumed distinct commercial impressions (trademarks) of Defendant:







111.    Defendant adopted and started using the assumed distinct commercial impressions marks (hereinafter collectively "Assumed Distinct Commercial Impression Trademarks") well after the BLUE FROG (word) mark trademark was first used and first used in commerce and well after the BLUE FROG (word) trademark became inured with considerable goodwill and a favorable reputation amongst the BLUE FROG ROOFING TARGET MARKETS.

112.    Each of the Assumed Distinct Commercial Impression Trademarks are highly similar to Plaintiff's BLUE FROG (word) mark trademark. For instance, there is no difference between Defendants BLUE FROG mark and Plaintiff's BLUE FROG (word) trademark. The marks both connote an overall impressions of BLUE FROG.

113.    Also, with respect to the Assumed Distinct Commercial Impression Trademark BLUE FROG RESTORATIONS, the inclusion of RESTORATIONS does not distinguish the

mark from Plaintiff's mark. Like Plaintiff's mark, BLUE FROG dominates in Defendant's mark. RESTORATIONS connotes a nature of the service. The service as shown by Defendant's own website encompasses Plaintiff's BLUE FROG ROOFING SERVICES.

114.    Finally, with respect to the Assumed Distinct Commercial Impression Trademark of Defendant's BLUE FROG and DESIGN shown above, the inclusion of the picture of the frog, house, and car does not distinguish the mark. The picture does not dominate as it simply mostly depicts what the mark sounds like. The mark, like Plaintiff's mark, has the commercial impression BLUE FROG. The mark's frog design is remembered simply as a blue frog without detail.

115.    On information and belief, the BLUE FROG ROOFING TARGET MARKETS exposed to the Plaintiff's BLUE FROG (word) trademark and Defendant's target markets exposed to the BLUE FROG RESTORATIONS and DESIGN Infringing Mark and to Defendant's Assumed Distinct Commercial Impression Trademarks overlap and include a substantial number of the same entities.

116.    On information and belief, the BLUE FROG MARKETING done in connection with the BLUE FROG (word) trademark and the Defendant's marketing done in connection with BLUE FROG RESTORATIONS and DESIGN Infringing Mark and Defendant's Assumed Distinct Commercial Impression Trademarks use the same and overlapping channels of trade. As for one such example, both parties use a website optimized for search. When one types into the Google search engine "Blue Frog Restorations review," one gets an AI overview describing services offered by Plaintiff. The user is presented with Defendant's websites. See Exhibit B attached hereto and incorporated herein by reference.

117.    On information and belief, Defendant copied Plaintiff's BLUE FROG (word) trademark.

118.    Actual confusion has occurred in connection with the use of the BLUE FROG RESTORATIONS and DESIGN Infringing Mark and Defendant's Assumed Distinct Commercial Impression Trademarks. In around 2024, Plaintiff received a call from a recipient of Defendant's shoddy roofing services done in connection with at least one of the BLUE FROG RESTORATIONS and DESIGN Infringing Mark and Defendant's Assumed Distinct Commercial Impression Trademarks. After some discussion, Plaintiff learned that Defendant, not Plaintiff, provided the roofing services.

119.    Additional actual confusion occurred when Plaintiff received calls from people who, on information and belief, received shoddy roofing services from Defendant's but blamed Plaintiff because the provider of the services used at least one of BLUE FROG RESTORATIONS and DESIGN Infringing Mark and Defendant's Assumed Distinct Commercial Impression Trademarks.

120.    Plaintiff asserts that the BLUE FROG ROOFING TARGET MARKET, not being specialized roofers themselves, would use a modest amount of time and care selecting the service provider.

121.    Based on at least the above described similarity between Plaintiffs BLUE FROG (word) trademark and Defendant's BLUE FROG RESTORATIONS and DESIGN Infringing Mark; the overlapping target markets; the overlapping channels of trade, the actual confusion, and copying, a likelihood of confusion and actual confusion exists amongst the relevant target markets as to whether the source of services offered in connection with Defendant's BLUE FROG RESTORATIONS and DESIGN Infringing Mark emanate from the same source as the

services offered in connection with Plaintiffs BLUE FROG (word) trademark or are otherwise associated with or sponsored by the source of services offered under the BLUE FROG (word) trademark.

122.   Accordingly, Defendant's BLUE FROG RESTORATIONS and DESIGN Infringing Mark infringes Plaintiff's BLUE FROG (word) trademark.

123.   Upon information and belief, the infringement is willful.

124.   Furthermore, based on at least the above described similarity between Plaintiffs BLUE FROG (word) trademark and each of Defendant's Assumed Distinct Commercial Impression Trademarks; the overlapping target markets; the overlapping channels of trade, the actual confusion, and copying, a likelihood of confusion exists and actual confusion exists amongst the relevant target markets as to whether the source of services offered in connection with each of Defendant's Assumed Distinct Commercial Impression Trademarks emanate from the same source as the services offered in connection with Plaintiffs BLUE FROG (word) trademark or are otherwise associated with or sponsored by the source of services offered under the BLUE FROG (word) trademark.

125.   Accordingly, Defendant's Assumed Distinct Commercial Impression Trademarks each infringe Plaintiff's BLUE FROG (word) trademark.

126.   Upon information and belief, the infringement is willful.

127.   As a result of the above-described infringement, Plaintiff has been damaged in that it has lost sales of services to the BLUE FROG ROOFING TARGET MARKET  to Defendant. Plaintiff has suffered irreparable harm in that its goodwill has suffered a diminution in value, and because Defendant has been unjustly enriched trading on the goodwill of Plaintiff. Unless Defendant is preliminarily and permanently enjoined from use of Defendant's BLUE

FROG RESTORATIONS and DESIGN Infringing Mark and each of Defendant's Assumed

Distinct Commercial Impression Trademarks, Plaintiff will continue to suffer irreparable harm.

## PRAYER FOR RELIEF

1.  WHEREAS PLAINTIFF prays this Court to:

    a.   enjoin Defendant from using BLUE FROG in any form or composite, or any
         colorable imitation thereof, in connection with BLUE FROG ROOFING
         SERVICES or any services similar thereto;

    b.  award Plaintiff its lost profits;

    c.  order Defendant to provide an accounting to Plaintiff and award Plaintiff
        Defendant's profits

    d.  award Plaintiff treble damages;

    e.  award Plaintiff its reasonable attorney fees and costs.

*(The remainder of this page is left intentionally blank, signatures follow on next page.)*

Dated this 18th day of April, 2025.

Respectfully Submitted,

By: _____/James B. Conte/_____

James B. Conte
Lead Counsel

ATTORNEY FOR PLAINTIFF
Illinois Bar Reg. No. 6226681
CR MILES P.C.
405 Mason Ct., Suite 119
Fort Collins, CO 80524
Email: jbconte@CRMILES.com
(970) 480-5496 telephone
(970) 492-0003 facsimile

Plaintiff hereby through undersigned counsel DEMANDS A JURY TRIAL.

By: _____/James B. Conte/_____

James B. Conte
Lead Counsel

ATTORNEY FOR PLAINTIFF
Illinois Bar Reg. No. 6226681
CR MILES P.C.
405 Mason Ct., Suite 119
Fort Collins, CO 80524
Email: jbconte@CRMILES.com
(970) 480-5496 telephone
(970) 492-0003 facsimile